IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MATTHEW CHAVIS,

      Plaintiff

v.

JOHN WOLFE, Warden,
HAMILTON, Officer Lt.,
UNIVERSITY OF MARYLAND,
CORRECTIONAL MEDICAL SERVICES/
  CORIZON, INC.,

      Defendants

CIVIL ACTION NO. ELH-11-3104

\* \* \* \* \* \*

**MEMORANDUM**

      Plaintiff Matthew Chavis, who is self-represented, is a State of Maryland inmate at Jessup Correctional Institution ("JCI"). He has filed a prisoner civil rights suit under 42 U.S.C. § 1983 against Warden John Wolfe, Lt. Briheem Hamilton, the University of Maryland, and Corizon, Inc. ("Corizon"), as a result of a vicious assault committed upon him by other inmates while he was in the prison recreation yard. According to Chavis, correctional officers ignored his cries for help and failed to protect him from a roving gang of inmates. During the assault, Chavis suffered multiple stab wounds and lost several teeth. He also complains that he did not receive proper medical care at the University of Maryland or at JCI.[1]

---

[1] The University of Maryland has not been served. Chavis's claims against the University of Maryland sound in negligence and fail to state a federally cognizable claim. Consequently, there is no basis for this court to exercise supplemental or pendant jurisdiction over Chavis's state law claim. *See* 28 U.S.C. § 1367(c). Accordingly, the University of Maryland was dismissed as a party defendant. *See* ECF 5.

      Recognizing that Chavis is a self-represented litigant, this court reminds him that, under Maryland law, a claim of medical negligence or malpractice may proceed only after review before the Maryland Health Claims Arbitration Board. *See* Md. Code, Cts & Jud. Proc., § 3–2A–01 et seq.; *see also Carroll v. Konits*, 400 Md. 167, 172, 929 A.2d 19, 22 (2007); *Davison v. Sinai Hospital of Baltimore, Inc.*, 462 F. Supp. 778, 779–81 (D. Md.1978); *Group Health*

Defendants Wolfe and Hamilton (the "State Defendants") have filed a "Motion To Dismiss Or, in the Alternative, Motion for Summary Judgment."  ECF No. 21.  Defendant Corizon, Inc. ("Corizon"), formerly known as Correctional Medical Services, Inc., has also filed a "Motion To Dismiss Or, In The Alternative, For Summary Judgment."  ECF No. 32.  Plaintiff has filed oppositions in response.  ECF Nos. 28, 35.[2]  No hearing is necessary to resolve the motions.  *See* Local Rule 105.6 (D. Md. 2011).  For reasons that follow, the State Defendants' motion (ECF No. 21) shall be treated as a motion to dismiss and is granted.  Corizon's motion shall be treated as one for summary judgment, and summary judgment will be entered in favor of Corizon.

## FACTUAL BACKGROUND

As noted, Chavis is a State inmate confined at JCI.  He alleges that on August 30, 2011,[3] he was attacked by five "known gang members" in the prison recreation yard at JCI.  He ran to the front gates, where a corrections officer was stationed on the other side, and screamed for help.  Complaint, Attachment, p. 5.  "The five inmates began to cut [Chavis] with a box cutter and hit [him] with master locks as the officer stood on the other side & watch[ed]."  *Id.*  According to Chavis, "the officer placed at the front gate of the yard did not respond."  *Id.* at 7.  The five inmates then ran away, and "left [Chavis] for dead [and] then the officers came to [his] aid."  *Id.* at 5.  Chavis was taken to the prison medical unit to treat his head, neck and back wounds, and a 911 emergency call was placed.  Chavis was transported to the University of

---

*Association, Inc. v. Blumenthal*, 295 Md. 104, 114, 453 A.2d 1198 (1983).  There is no demonstration that Chavis has sought or completed such review.

[2] Chavis was provided notice of his rights regarding the pending dispositive motions, pursuant to *Roseboro v. Garrison,* 528 F.2d 309 (4th Cir. 1975).  ECF Nos. 22 and 33.

[3] Plaintiff has stated that the incident occurred on August 30, 2011, as well as on August 31, 2011.  *See*, *e.g.*, ECF 1 at 5, 7.  It appears that the assault occurred on August 30, 2011, although the exact date is not material to the issues.

2

Maryland Shock Trauma Center, where he was "rushed into surgery" for his neck wound.  *See id.*  He received 70 staples to his head, neck, and back and also lost three teeth.  *See id.* at 6-7.

On September 1, 2011, Chavis was discharged from the hospital and returned to JCI.  He complained of dizziness and weakness.  The next day, September 2, 2011, Chavis returned to the University Maryland Medical Center for a blood transfusion.  On September 4, 2011, Chavis "was brought back to the prison where I wasn't given nothing for pain.  The medical failed to hear to the doctors['] orders at the hospital [sic]."  *Id.* at 6.

On September 5, 2011, Lieutenant Hamilton interviewed Chavis about the attack.  According to Chavis, Lt. Hamilton told him during the interview that prison gang leaders had promised [Hamilton] that "no blood would be shed during the month of Ramadan."  *Id.  See also id.* at 7 (stating that Hamilton said he was told by the gang leader that "no blood would be shed during the Muslim holiday").  Plaintiff was attacked "the day after the holiday."  *Id.*

In his Complaint, Chavis faults Corizon for failing to treat him adequately after his release from Shock Trauma.  Chavis also asserts he "was forced to undergo severe pain for 2 weeks from the broken teeth" before he saw a dentist to have them removed.  *Id.* at 7; *see also* Plaintiff's Reply, ECF No. 35.  Additionally, he claims the State Defendants failed to protect him from harm by other inmates by failing to use metal detectors to search inmates entering the recreation yard.  Chavis also claims he was assigned to unsafe housing with the prison gang members who attacked him.  *See id.* at  8.[4]  As relief, he requests damages in the amount of

---

[4] Chavis's motion for preliminary injunctive relief to transfer him immediately to protective custody was instituted as a separate case.  *See Chavis v. Wolfe, et al.*, Civil Action No. ELH-12-283 (D. Md 2012).  Subsequently, Chavis requested and this court granted his motion for leave to voluntary withdraw his motion for injunctive relief.  Civil Action No. ELH-12-283, ECF Nos. 9 and 10.  Thus, Chavis's claim of unsafe housing is no longer at issue.

Nevertheless, it is worth noting that Chavis is housed in administrative segregation in a

$100,00.00 and demands that his teeth be "fix[ed]" by the State of Maryland.  *Id.*

In support of its motion for summary judgment, Corizon has filed verified copies of Chavis's medical records, along with an affidavit from Corizon's Regional Medical Director, Kasahun Temesgen, M.D.  The records, which are uncontroverted, are summarized as follows.

On August 30, 201l, Chavis was brought to the JCI medical unit with multiple stab wounds to his back, abdomen, face, right leg, right shoulder, and scalp, as well as missing teeth. ECF No. 32, Ex. B (medical records) at l and 3; Ex. A (Affidavit of Dr. Temesgen), ¶ 3.  Chavis was alert and oriented, but appeared anxious and complained of dizziness and nausea.  Ex. B at 4; Ex. A, ¶ 3.  He was evaluated by Andrew Moultrie, M.D.  Ex. A, ¶ 3; Ex. B at 4.  After intravenous fluids were started and the bleeding was controlled, Chavis was transported to the Shock Trauma Center at the University of Maryland Medical Center, where his wounds were sutured and he was stabilized prior to his discharge to JCI.  Ex. B at  6; Ex. A, ¶ 3.  The hospital physicians recommended Percocet or Oxycodone for pain relief "per discretion" of prison medical providers, and advised Chavis to return if he experienced fever or shortness of breath. Ex. B at 9 and 1l; Ex. A, ¶ 4.  Chavis was instructed to return in one week for removal of the drain in his neck and his staples.  *See* Ex. B at 7-9, 11; Ex. A, ¶ 4.

On August 3l, 2011, Chavis was admitted to the prison medical infirmary for further observation and treatment.  Ex. B at 16; Ex. A, ¶ 5.  His medical records show he was uncooperative and refused medical providers to examine him or monitor his vital signs.  *See* Ex. B at 19; Ex. A, ¶ 5.  Chavis demanded pain medication and was given Nubain 10 mg

single inmate cell and takes his recreation and other out-of-cell activities alone.  *See* ECF No. 21; *see also* Civil Action ELH-12-283, ECF No. 5, Exhibit A, Declaration of Captain Eric Jefferson. Officer in Charge of the Special Housing Unit, JCI.  In addition to separate housing from all general population inmates and other inmates in the segregation unit, Chavis is escorted by corrections officers whenever he leaves his cell.  *Id.*

intramuscularly at 11:05 p.m. on August 31, 2011. *See* Ex. B at 19, 59; Ex. A, ¶ 5. Two oral narcotic analgesics, Percocet and Tylenol #3 (acetaminophen with codeine), were prescribed on an as needed basis for additional pain relief. *See* Ex. B at 20 and 59; Ex. A, ¶ 5. Chavis was required to request his oral pain medications because neither is given on a routine basis. Ex. B at 59; Ex. A, ¶ 6.

On September 1, 2011, Chavis complained that the Tylenol # 3 did not work and wanted "strong pain medication." Ex. B at 21; Ex. A, ¶ 7. That afternoon, Chavis developed a fever and complained of abdominal pain, chills, and tenderness around the drain in his neck, and was taken to the University of Maryland Medical Center. Ex. B at 21; Ex. A, ¶ 7. Chavis's pain medications were stopped temporarily to ensure that they did not mask his symptoms. Ex. B at 21; Ex. A, ¶ 7. Physicians removed the drain in Chavis's neck, and he was given a transfusion because he was anemic. Ex. B at 26, Ex. A, ¶ 8. There were no signs of infection, however. Ex. B at 27; Ex. A, ¶ 8.

Chavis was discharged from the hospital on September 3, 2011, and was again admitted to the JCI Infirmary, where he complained of pain from his wounds and his missing teeth. Ex. B at 33; Ex. A, ¶ 8. He demanded pain medication but refused to allow medical personnel to monitor his vital signs. Ex. B at 37; Ex. A, ¶ 9. Hid Tylenol # 3 and Percocet prescriptions were continued for pain relief. Ex. B at 34; Ex. A, ¶ 9. On September 3, 2011, Chavis was twice given Percocet. Ex B at 62; Ex. A, ¶ 10. From September 4 to September 5, 2007, Chavis was given Tylenol #3 seven times. Ex. B at 62; Ex. A, ¶ 10. On September 6, 2011, Chavis received three doses of Percocet. *See id.*

Chavis returned to the University of Maryland Medical Center on September 5, 2011, for a follow-up examination. Ex. B at 42; Ex. A, ¶ 11. Some staples were removed and no infection

was noted.  *Id.*  On September  6, 2011, Corizon medical staff referred Chavis to the Dental Department for dental treatment.[5]  Ex. B at 49; Ex. A, ¶ 12.  On September 7, 2011, Chavis was discharged from the infirmary with Tylenol (without codeine), which he had indicated relieved his pain.  Ex. B at 49-52; Ex. A, ¶ 12.

After plaintiff was discharged from the infirmary, he submitted a Sick Call Request Form dated September 7, 2011, complaining of pain in his mouth due to his broken teeth.  Ex. B at 50; Ex. A, ¶  13.  The Sick Call Request Form was forwarded to the Dental Department for evaluation and treatment.  *Id.*  After discharge from the infirmary, Chavis did not notify medical staff that he needed more pain medication.  Ex. A, ¶ 14.

On September 13, 2011, Chavis was examined by a physician's assistant during a follow-up evaluation.  Ex. A, ¶ 14; Ex. B at 55.  Chavis complained of pain and stated he had not been receiving pain medication.  *Id.*  Chavis was then prescribed Tylenol Extra Strength for pain.  *See id.*  On September 17, 2011, Chavis submitted a Sick Call Request Form, stating that he had 70 staples that needed to be removed.  Ex. B at 56; Ex. A, ¶ 14.  Chavis's staples were removed on

---

[5] Chavis complains that he had to wait for two weeks until he "was called to the dentist" to have his teeth removed.  ECF No. 1, Complaint at 7.  Additionally he asserts that the "medical dept. left me with these broken off teeth inside my mouth for 3 weeks after my assault before removing them.  I would like the courts [sic] to know these teeth were not chipped teeth, but teeth that broken off up into the gum."  ECF No. 35, Reply.  Plaintiff was seen by Ayaleu Melaku, M.D. on September 6, 2011, at the office of Inmate Health Services.  He wrote: "pt referred to dental."  ECF 35 at 49.  Chavis filed a sick call request form dated September 7, 2011 (the day he left the JCI infirmary), complaining that he had three broken teeth and that they were hurting him.  ECF No. 35 at 50.  The slip is dated stamped September 10, 2011, and bears a second date stamp "received by Den [dental] September 14, 2011."  The form notes "traumatic injury[,] root tips" and was signed by F. Coffey, DDS on September 9, 2011.

However, Chavis's dental records have not been submitted to the court, and the dentists at JCI are not Corizon employees.  ECF No. 32, Memorandum, n.4.  Nor has the dental provider at JCI been named as a defendant in this case.  Thus, to the extent Chavis wants to raise claims of constitutionally inadequate dental care against JCI dental providers, he may do so by filing a separate complaint.  The Clerk shall send him a blank civil rights complaint form in the event plaintiff intends to pursue such a claim.

or about September 23, 2011.  On September 19, 2011, Chavis received ibuprofen for pain relief

from the Dental Department.  Ex. B at 64; Ex. A, ¶ 14.

## STANDARD OF REVIEW

### Motion to Dismiss

Under  Fed. R. Civ. P.  8(a)(2), a complaint must contain a "short and plain statement of

the claim showing that the pleader is entitled to relief."  "[T]he purpose of Rule 12(b)(6) is to test

the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a

claim, or the applicability of defenses."  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th

Cir. 2006).  When ruling on such a motion, the court must "accept the well-pled allegations of

the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the

light most favorable to the plaintiff."  *Ibarra v. United States,* 120 F.3d 472, 474 (4th Cir. 1997).

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief

that is plausible on its face."  *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007).

To survive a Rule 12(b)(6) motion, the legal framework of the complaint must be supported by

factual allegations that "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at

555.  The Supreme Court has explained that "[t]hreadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice" to plead a claim.  *Ashcroft v.

Iqbal*, 556 U.S. 662, 678 (2009).  The plausibility standard requires that the pleader show more

than a sheer possibility of success, although it does not impose a "probability requirement."

*Twombly*, 550 U.S. at 556.  Thus, a court must "draw on its judicial experience and common

sense" to determine whether the pleader has stated a plausible claim for relief.  *Id*. at 1950; *see

also Brockington v. Boykins,* 637 F.3d 503, 505-06 (4th Cir. 2011).

## Motion for Summary Judgment

Defendants' motions are styled as motions to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56, implicating the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure.  *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp.2d 431, 436-37 (D. Md. 2011).  Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc*., 510 F.3d 442, 450 (4th Cir. 2007).  However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d).  If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed.R.Civ.P. 12(d).  When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metropolitan Washington Airports Authority,* 149 F.3d 253, 261 (4th Cir. 1998).[6]

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule

---

[6] In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so.  *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Board Unit 200 v. Norfolk  Southern Corporation,*109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Fisher v. Md. Department of Public Safety & Correctional Services,*  Civ. No. JFM–10–0206, 2010 WL 2732334, at *3 (D.  Md.).

12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165–67.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours and Company v. Kolon Industries, Inc.,* 637 F.3d 435, 448-49 (4th Cir 2011). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Technologies Applications & Service Company*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed.R.Civ.P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).[7] In the instant matter, Chavis did not file an affidavit under

---

[7] Chavis's motion for discovery is generally stated and fails to provide reasons why the materials requested are necessary. ECF No. 26. " ' Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery.' " *Hamilton v. Mayor & City Council of Baltimore*, 807 F.Supp.2d 331, 342 (D. Md.2011) (quoting *Young v. UPS*, No. DKC–08–2586, 2011 WL 665321, at *20 (D.Md.2011)). "Rather, to justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.' " *Scott v. Nuvell Financial Services*, LLC, 789 F.Supp.2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for

Rule 56(d) providing specific reasons for why he needed discovery.[8]  Consequently, the court

finds it appropriate to address Corizon's motion as one for summary judgment.

Summary Judgment is governed by Fed.R.Civ.P. 56(a), which provides, in part:

> The court shall grant summary judgment if the movant shows that there is
> no genuine dispute as to any material fact and the movant is entitled to
> judgment as a matter of law

The Supreme Court has clarified that this does not mean that any factual dispute will defeat

the motion:

> By its very terms, this standard provides that the mere existence of some alleged factual
> dispute between the parties will not defeat an otherwise properly supported motion for
> summary judgment; the requirement is that there be no *genuine* issue of material fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).

In resolving the motion, the court should "view the evidence in the light most favorable

to ... the nonmovant, and draw all inferences in her favor without weighing the evidence or

---

discovery would not have by itself created a genuine issue of material fact sufficient to defeat
summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995);
*see Amirmokri v. Abraham*, 437 F.Supp.2d 414, 420 (D. Md. 2006), aff'd, 266 F. App'x. 274 (4th
Cir.), cert. denied, 555 U.S. 885, (2008). Here, Chavis received his relevant medical records as
an exhibit filed with Corizon's dispositive motion. ECF No. 21 Exhibit 2 and Certificate of
Service.

[8] If a non-moving party believes that further discovery is necessary before consideration
of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because " 'the
failure to file an affidavit ... is itself sufficient grounds to reject a claim that the opportunity for
discovery was inadequate.' " *Harrods*, 302 F.3d at 244 (citations omitted). But, the non-moving
party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment
ruling that is obviously premature. Although the Fourth Circuit has placed " 'great weight' " on
the Rule 56(d) affidavit, and has said that a mere " 'reference to Rule 56(f) [now Rule 56(d) ]
and the need for additional discovery in a memorandum of law in opposition to a motion for
summary judgment is not an adequate substitute for [an] affidavit,' " the appellate court has "not
always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the
Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately
informed the district court that the motion is premature and that more discovery is necessary"
and the "nonmoving party's objections before the district court 'served as the functional
equivalent of an affidavit.' " *Id.* at 244–45 (internal citations omitted).

assessing the witness' credibility." *Dennis v. Columbia Colleton Medical Center, Inc.*, 290 F.3d 639, 644–45 (4th Cir. 2002).   However, "[t]he party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).   Moreover, the court must abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Id.* at 526 (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993) and citing *Celotex Corporation. v. Catrett*, 477 U.S. 317, 323–24 (1986)).   Because Chavis is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).   The court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex* 477 U.S. at 323-24 (1986)).

## DISCUSSION

In their response, the State Defendants raise Chavis's failure to exhaust available administrative remedies as an affirmative defense to the failure to protect claim.   ECF 21, Memorandum p. 4.   The Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e *et seq.*, requires that "prisoners ... exhaust such administrative remedies as are available prior to filing suit in federal court." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (internal quotation marks omitted) (quoting 42 U.S.C. § 1997e(a)).   The PLRA applies to "all inmate suits about prison life, whether they involved general   circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532

(2002).   Before bringing suit in federal court, "a prisoner must have utilized all available remedies 'in accordance with the applicable procedural rules,' so that prison officials have been given an opportunity to address the claims administratively." *Id.* (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)).

Of import here, exhaustion is mandatory; unexhausted claims may not be brought in court.  *See Jones v. Bock*, 549 U.S. 199 (2007).   Therefore, a district court may, *sua sponte*, "dismiss [ ] a complaint where the failure to exhaust is apparent from the face of the complaint" as long as the inmate is provided the "opportunity to respond to the issue" prior to dismissal. *Anderson v. XYZ Correctional Health Services., Inc.*, 407 F.3d 674, 683 (4th Cir. 2005).

Chavis acknowledges that he failed to initiate or exhaust administrative remedies prior to filing suit.  Complaint, p. 2.  Notably, Chavis does not claim, nor does the record suggest, that his injuries rendered him incapable of presenting his complaints through the administrative remedy procedure process at JCI.   Consequently, his failure to protect claim must be dismissed.

Even were this claim to proceed, however,  it would be subject to dismissal on other grounds, as discussed below.

### Supervisory Liability

The doctrines of vicarious liability and respondeat superior[9] are generally not applicable in § 1983 actions.  *See Vinnedge v. Gibbs*, 550 F.2d 926, 927–99 (4th Cir. 1977); *see also Monell v. Department of Social Services of City of N.Y.*, 436 U.S. 658, 691 (1978).  Supervisory officials may be held liable only in certain circumstances for the constitutional injuries inflicted by their subordinates.  *See Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir .1994) (citing *Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984)).  Supervisory liability is not premised on respondeat superior, but upon

---

[9] Respondeat superior is a legal doctrine by which an employer may be held responsible for its employees.

"a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Id.* at 798 (quoting Slakan, 737 F.2d at 372–73). "[L]iability ultimately is determined 'by pinpointing the persons in the decisionmaking chain whose deliberate indifference permitted the constitutional abuses to continue unchecked.'" *Id.*

To establish supervisory liability under § 1983, a plaintiff must demonstrate: 1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; 2) the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and  3) there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw*, 13 F.3d  at 799 (4th Cir. 1994).

A plaintiff in a supervisory liability case "assumes a heavy burden of proof," as the plaintiff "not only must demonstrate that the prisoners face a pervasive and unreasonable risk of harm from some specified source, but he must show that the supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practices."  *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984).  Generally speaking, a plaintiff cannot satisfy this heavy burden of proof "by pointing to a single incident or isolated incidents."  *Id.*  But, "[a] supervisor's continued inaction in the face of documented widespread abuses ... provides an independent basis for finding he either was deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates."  *Id.* (citations omitted).

Here, there is no allegation that Warden Wolfe knew Chavis was in danger of attack and no legal basis for assigning supervisory liability.  Nor is there any evidence that any subordinate

abridged Chavis's constitutional rights.  The attack on Chavis was most unfortunate, to be sure. But, it was a singular incident and, after the attack, immediate steps were taken to secure medical treatment for plaintiff and to place him in protected housing.

### Failure to Protect

The "Eighth Amendment protects a convicted inmate from physical harm at the hands of fellow inmates resulting from the deliberate or callous indifference of prison officials to a specific known risk of such harm." *Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987); *see Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 198 (1991). "[D]eliberate indifference entails something more than mere negligence ... [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Short v. Smoot*, 436 F.3d 422, 427 (4th Cir. 2006) (quoting *Farmer*, 511 U.S. at 835).  Deliberate indifference in the context of a prisoner failure-to-protect claim requires that a defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837 (1994); *see also Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 302-303 (4th Cir. 2004).

Negligent failure by a prison official to protect an inmate from attack by another inmate does not to state a claim under the Eighth Amendment.  *See Pressly*, 816 F.2d at 979.  The Eighth Amendment's deliberate indifference standard protects an inmate only where it is shown that prison officials either intended for the inmate to be harmed or that they knowingly disregarded an obvious threat to such an extent that one can only assume the officials intended the threat to be carried out.  Unfortunately, "prisons are dangerous places. Inmates get there by violent acts, and many prisoners have a propensity to commit more." *Riccardo v. Rausch*, 375

F.3d 521, 525 (7th Cir. 2004).

Prison officials are liable for failure to protect an inmate only if the officer knew the inmate faced a risk of harm and disregarded that risk by failing to take reasonable measures to abate it. *See Farmer*, 511 U.S. at 847. In this case, Chavis does not allege that either the Warden or Lieutenant Hamilton knew of a specific threat to Chavis's safety and then acted with deliberate indifference to that knowledge.[10] Rather, he claims that Lieutenant Hamilton said that prison gang leaders had promised that no violence would occur during Ramadan. Even if Hamilton made this remark,[11] and even if such a promise had been made by gang members, this provides no grounds to suggest that Hamilton knew of a specific threat to Chavis's safety. Plaintiff's general assertions of deficient institutional search procedures and staffing levels similarly provide no grounds to find that the State Defendants acted with deliberate indifference to Chavis's safety.[12] Last, Chavis provides no substantiation for his claim that he was knowingly assigned to unsafe housing. In sum, Chavis's assertions fail to amount to a claim of constitutional magnitude.[13]

### Medical Care

Corizon, a provider of contractual medical services to inmates at certain Maryland

---

[10] Chavis later asserted that Sergeant Lane, the supervising officer at the front gate to the recreation yard, failed to properly search inmates before they entered. ECF No. 27. Sergeant Lane is not a party to these proceedings. In any event, while Chavis's assertion might state a cause of action for negligence, it fails to satisfy the standard of deliberate indifference required to bring an Eighth Amendment failure to protect claim.

[11] Neither Chavis nor Hamilton submitted an affidavit to support plaintiff's assertion.

[12] Nevertheless, the Court is troubled by the State Defendants' failure to respond to Chavis's allegation, although general, that correctional officers watched the assault without intervening.

[13] In light of these determinations, this court does not reach the State Defendants' qualified immunity defense.

correctional institutions, argues that it is not amenable to suit because principles of respondeat superior do not apply in § 1983 proceedings. A private corporation is not liable under § 1983 for actions allegedly committed by its employees when such liability is predicated solely upon a theory of respondeat superior. *See Austin v. Paramount Parks, Inc.,* 195 F.3d 715, 727-28 (4th Cir. 1999); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982); *Clark v. Maryland Department of Public Safety and Correctional Services*, 316 Fed. Appx. 279, 282 (4th Cir. 2009).

Even if this case were not subject to dismissal for the reasons stated above, Chavis's claims would be unavailing. The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). When prison officials show "deliberate indifference" to a prisoner's "serious medical needs," their actions or omissions give rise to an Eighth Amendment violation. *Id.* at 104. A prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Moreover, the medical treatment provided must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *See Miltier,* 896 F.2d at 851.

Mere negligence or malpractice does not rise to a constitutional level. *See Estelle*, 429 U.S. at 105-06. Rather, a defendant must know of and disregard an excessive risk to inmate health or safety. An inmate's disagreement with medical providers about the proper course of treatment does not support an Eighth Amendment cause of action. *See Wright v. Collins,* 766 F.2d 841, 849 (4th Cir. 1985); *Wester v. Jones*, 554 F.2d 1285 (4th Cir. 1977); *Russell v. Sheffer*, 528 F.2d 318 (4th Cir. 1975).

Chavis's medical records demonstrate that he received prompt and continuing care for his

injuries.  He was provided with intramuscular pain medication as well as narcotic and other analgesics on an as needed basis.  There is no genuine issue of fact presented here that prisoner medical providers acted with the requisite deliberate indifference to Chavis's serious medical needs.

For the foregoing reasons, the State Defendants' motion to dismiss will be granted. Corizon's Motion for Summary Judgment (ECF No. 32) will be granted and judgment entered in its favor.  An order implementing this ruling follows.


<u>August 22, 2012</u>                                        <u>/s/                                                        </u>
Date                                                         Ellen L. Hollander
                                                             United States District Judge